Good morning. Good morning. Good morning and may it please the court, Katie Lane on behalf of appellants, I'm going to aim to reserve four minutes for rebuttal. That might be aspirational. The fundamental error in the decision below is that the district court decided that there's a first amendment problem with a law prohibiting individuals from maintaining multiple voter registrations. But Montana's law is constitutional in all of its applications because there is no right to maintain multiple voter registrations just like there is no right to vote multiple times in the same election. And if there is any doubt as to the law's constitutionality before, net choice confirms that the plaintiffs here have not met their burden for a facial overbirth challenge. So we have this case, obviously it's abusive discretions that what we're looking at on some level, correct? But I have a question of you're saying, you're now arguing for the first time on appeal that there's not a first amendment right to register where, you know, as far as that goes. What was the posture in the district court? My understanding is that everyone basically assumed there was a first amendment right at stake. Below Your Honor, the parties did argue and dispute the applicability. The only case cited below in support of the first amendment finding was the Preminger v. Peete case. And the parties did dispute the, you know, extent of that, if that's applicability here. But then the district court concluded categorically that voter registration equals first amendment protected activity. And so now on appeal, this court, that is a legal question for this court to review. And our position is that Preminger v. Peete not only does not stand for that categorical rule, but particularly in light of net choice. So where do you raise it in your briefs? Is it in your reply brief? On appeal, Your Honor, we raise it in our opening and on our reply brief. Our opening brief at page 22, for example, we say that Preminger v. Peete does not establish a categorical rule. And then again on our reply brief on pages 9 to 10, we explain how that's not protected speech. Counsel, I'm a little confused by your initial answer to Judge Callahan, because I thought that in the district court, you did not specifically argue that registering to vote isn't a first amendment protected activity. Am I wrong about that? Or did you make that argument? Well, Your Honor, we argued below that the overbreath was not the appropriate standard. And particularly, we focused there on the hypotheticals that plaintiffs had put forth focusing on, you know... Counsel, this is not responsive to my question, which was a yes or no question. Did you argue in the district court that registering to vote is not an activity that is protected by the first amendment? No, Your Honor. And I don't think that's the question that is relevant here, because what we're saying here is that, and this is again, particularly in light of net choice, the level of granularity with which this court must evaluate whether the conduct regulated by, I'm going to refer to it as subsection 5, is we look at what is the conduct by what actors. And so the question of whether voter registration broadly is a first amendment protected activity is not the relevant question here. The relevant question is whether the right to main...whether maintaining multiple voter registrations... But why shouldn't we find that you waived the issue? You didn't raise it in your opposition to the injunction in the district court. We're not supposed to decide things for the first time on appeal that haven't been reviewed and considered in the first instance by the district court. And then constitutional avoidance, if we can resolve this case on other grounds, would dictate that we shouldn't reach it. Well, Your Honor, again, our position is that the...what is on appeal here is that on page...I think it's excerpts of the record, page 23, that's page 20 of the district court's decision, is where the district court concludes categorically that voter registration is speech. And so on appeal now, we are asserting that that is...that is not...not only is that not correct as a matter of law, but also, you know, again, in light of net choice, this...that the district court needs to evaluate the full scope of the conduct actually regulated. And that... The district court assumed it because the parties didn't dispute it. Well, Your Honor, again, the parties did...there was discussion about the applicability of Preminger versus Peek. I agree that we are making more of an argument about that on appeal, again, in light of both the district court held and, again, after net choice. But even if... Can I ask you a different question, though? And that is, the statute chills registration, or let me just ask it differently. Did the district court abuse its discretion by determining that the law chills registration to vote, which in turn necessarily chills actual voting? What's wrong with that? Two responses, Your Honor. The first is that it's not supported by the record. The hypotheticals that plaintiffs put forth about the college students, the people who are, for example, dropping out of their probationary job, the probation period of their jobs, that that is not...that does not...that is not supported...that does not show that the law is constitutional in those circumstances. But more to the point, Your Honor, net choice explains very clearly that the court, the district court, the lower courts have to consider the full range of the applications. And so that's a legal question. Because...because the...well, go ahead. Keep going. Your Honor, I was just going to say that the question of whether the district court conducted a proper overbreath analysis is a legal question that this court can review de novo. And again, our position is that there is not protected conduct here. Plaintiffs have not showed...have not cited to any case, nor am I aware of any case that says that maintaining multiple voter registrations... But why is that the right lens? Registering to vote is the only way that you get to vote, obviously. And so the interest that individuals have in registering, it's not like, you know, registering your dog to get a dog tag, which doesn't implicate the First Amendment. Registering to vote, the purpose of it is so that you can vote, which is a First Amendment protected activity. And it seems to me that, you know, a law that puts people in prison if they're unable to get their previous place to take them off the voter rolls is...is definitionally chilling of the right to vote. So two responses to that, Your Honor. First, there's no expressive activity in the act of registering to vote itself. It's providing...you provide your name, your residence, that kind of information. And there's...so...and I'd liken it to, for example, you know, a parade. We know that parades have some component of speech, but a permit, filling out the application for a permit for a parade would not be protected speech. And that's what... What if the law...what if a law said that you would be put in prison for 18 months if your parade permit was inaccurate or somehow conflicted with another parade? Would that be chilling of the right to have a parade, or would that just be chilling about paperwork? So Your Honor, I think...and what I hear your question getting at is that...is the felony provision, the penalty for compliance or noncompliance with the law. And that...excuse me, that penalty provision doesn't answer the threshold question of what conduct the law actually regulates by what actors. It also doesn't answer the question of whether the application of the law in certain circumstances, certain factual scenarios, is actually constitutional or unconstitutional. Well, I guess what I'm struggling with at this point, since it wasn't argued before the district court about this being...that it's...that registering doesn't have constitutional implications, I don't know how...okay, I've lived in the same place for a very long time, but I lived in other places previously where I've always voted. I think I voted in everything that...I might have missed a city election for dog catcher or something at some point, but I'm a voter, okay, and I always register. And...but I never unregistered in those other places, so arguably...my understanding is what we're trying to hit here is you can't vote twice, okay? And I've never voted twice. And if people are registered in other spots, I guess they could get an absentee from that spot and get it sent, and then they could vote again in person, or there would be a number of ways that they could vote twice. But I think most of us were registered somewhere else at some other point in our life, and I don't know that we unregistered there. I mean, I don't...it...it...I think that's the over-breadth argument that we have here. And then to criminalize, when I registered in the other place, I wasn't doing anything wrong. I've never double...what would be wrong is if I voted in both places. Is...I don't even know if it's illegal to be registered in more than one spot. What I do know is it appears to be wrong if you vote twice. So what's our...what's our best argument that it's illegal to be registered in more than one spot, or is it illegal to vote twice? Well, Your Honor, the text of the statute that...that's at issue here makes it illegal to be registered twice, but only when you've met the mens rea purposely. And so, for example, Your Honor describing... But is that really even illegal? I mean, isn't what's illegal that you vote twice? Well, the...that...that is subsection 4 to make...make it a felony to vote twice, but subsection 5, as the bill's sponsor explained, is another tool... But how do you unregister? How do you unregister? I don't even...I have no idea how that would happen. I could...I...I...I could have...I could be registered back when I was 18 years old somewhere else, and then I'd live somewhere, you know. So, again, Your Honor, I...I think that goes to the purposely, but if...as far as the mechanics of unregistering, canceling your prior voter registration, the Secretary of State's office has a process in place. You fill out a form and... Don't everywhere. My daughter has moved to another state and she can't seem to get unregistered in Oregon, and she finally gave up trying. So, she...she's been voting in a different state now for a number of years. So, that...her inability to get regis...unregistered somewhere else, and she would be purposely then registering to vote where she lives, would that be a violation if she were in Montana, which she is not? Your Honor, I would...I would say that that would not...the purpose...again, the mens rea purposely...I think it would be questionable about whether...whether she's met that mens rea, but I think the key question here... But...but isn't the problem... That takes us straight to the...that takes us straight to the vagueness question. What...purposefully means I...I am intending, I think, to reg...to register now, even though I used to be registered in another state or some other country or who knows where. So, how do you...how do you know if you violated the law? The amicus actually disagrees with you. I know you say mens rea purposefully, you're not required to try to cancel your prior registrations, but the amicus brief says, yes, you are. So, how is that not vague that a party that is actually submitting a brief in support of your position comes to a completely contrary interpretation of the statute? I mean, the police have a saying, you can...you can beat the rap, but not the ride, and that's it seems like what you're saying, that, okay, Judge Graber's daughter would not be purposely doing that because she tried, but that doesn't mean she couldn't get arrested because apparently she is registered in two places. Well, again, Your Honor, I mean, this goes, I think, more broadly... Just to go to court to prove that it wasn't purposeful, you know, that's not exactly...doesn't make you feel better. I hear Your Honor's concerns, but I'd respond by saying that Montana law clearly defines purposely and it uses that mens rea requirement purposely, knowingly, negligently, in all of its...and throughout its criminal code. And so, to the extent that we're, you know, even if...even if we were to be talking about these hypothetical scenarios, I mean, we still need to...we still need to establish, and plaintiffs have not done so, showing that the application is...of that law is unconstitutional as applied. And even if it is unconstitutional in the circumstance for the daughter in Oregon who lives, you know, elsewhere, again, we're...net choice requires us to look at the full range of applications of the law, and we don't look at them... Well, so, you're saying the reason for this is we don't want people double voting. That's why you're doing this, right, is to prevent double voting? Yeah, it's a measure to even eliminate the risk, to help eliminate the risk of double voting. Right, which I obviously agree with. But that being said, if we look at the record here, maybe you can...it seemed like the record, the district court looked at duplicate voting and what, there were 14 cases that you were able to identify?  Mm-hmm. So, and then what the other side, because you didn't make the argument below that it's not constitutional on the right to register, the district court analyzed it and said, you're keeping people from voting on the one hand because you don't want double voting, and you only can come up with 14 cases of double voting, so it says, you know, you're using, you know, a cleaver to, that when you could just use a butter knife. Your Honor, in that analysis, it goes to, I mean, it flips the burden to the state to provide, you know, to provide an interest to show that it's narrowly, the law is narrowly tailored. But here, we're before the court on a facial overgrowth challenge, and at every stage, the plaintiffs bear the burden of first showing that it's protected conduct, and even if this court does not look at the question of whether it's protected conduct, we move to the next step, which is, you know, after net choice, you know, all the overgrowth cases before the Supreme Court, looking at the full range of the applications and looking at whether applied to each of those, you know, applications of the law, it's constitutional and unconstitutional, and then we have to conclude that it's substantial both on, in the absolute sense and in the relative sense. And, and even if this court were to conclude that voter registration is speech, plaintiffs have not met their burden on the second and third issue, and after net choice, the proper course is to still vacate the injunction. And I think net choice is actually helpful for Your Honor's question. I find it hard to believe. I just always like to think what the Supreme Court could say, and I just taught something on freedom of speech. And I've always found it, it was a talk to me when I found out that money is speech, okay? I find it hard to believe that a Supreme Court is going to say that money is speech and not say that voting is speech. That, that's, that's a stretch for me. I'm just, just thinking ahead here. Your Honor, I would, I would say that I think net choice is helpful for that, for that question, because again, we're not saying, so net choice, content moderation, we're not looking at the 30,000-foot view of it. Social media speech is the Internet speech. We're looking at the specific conduct regulated by Florida's law and Texas's law. And here, even if this, this court thinks that generally, you know, voting is, is a, is protected speech, we have to look at the granule level of what subsection 5 itself regulates. Again, using net choice's language, what conduct by what actors does the law prohibitor regulate? And again, here at that granule level, we're looking at main, maintaining multiple voter registrations. So even if this court concludes voter registration is speech, even if this court were to say maintaining a voter registration, a single one, is speech, there's no cases that would suggest that maintaining multiple voter registrations is speech. And even if this court were to disagree on that or not want to reach that question, we have to then get to that second piece of net choice, which says you have to look at the full range of applications. And in net choice, the parties came to the court and they said, they said, let's talk about Facebook, let's talk about YouTube, I think Instagram. But, but you would agree we would look at that determination of the number of unconstitutional applications for clear error. And I'm looking at the record that Judge Callahan just cited. You have 14 cases of suspected, not even verified, double voting. And then you have 5,200 members of young, highly transient voters. It looks like it was a fairly extensive record before the district court. So how can we find clear error? Your Honor, there's no, there's nothing in the record that explains how the application of the, of the subsection 5 to those 5,000 transient voters is unconstitutional, is actually unconstitutional that any of them have been denied the right to vote, have been unable to register to vote, have been unable to cast a ballot in an election. And I'd point the to the fact that, that this law was in effect for nearly a year before it was enjoined. And there was, there were no instances that plaintiffs could even point to where it was actually applied. And then we can look at it. So you're saying just chilling voter registration is not enough? You're saying someone actually has to be denied the right to vote? That's what it sounded like. Your standards seem to be much higher than what we would actually need to find here. Your Honor, I, and I, I, thank you. I, I want to be clear. They don't need to actually, you know, I, I agree that in this over-broad universe that we're operating in, we are dealing in hypotheticals. But there has to, again, we have to look at the full, all the Montana voters that this law applies to. It is being constitutionally applied to all of them, even if we take out that 5,000 transient voters. The, the, the numerator, if you will, is not the 14 actual convictions. It's all Montana voters, again, being, having the law applied to them. And in most scenarios, even if we think that the college student, the job probation person, those are unconstitutional applications, which we do not agree. The, the, again, the comparator is all Montana voters. And again, and, and, and point the Court to net choice. We have to look at the full range. We don't just pick and choose hypotheticals. We have to look at, in net choice, the Etsys, the Venmos, the Ubers of the world, and compare the full range of applications, so that, and plaintiffs bear the burden of showing that the over-breath is substantial, both in the absolute sense and relative to that plainly legitimate sweep, I think that Judge Coates did. Okay. We've taken you over your time. Do either of my colleagues have additional questions? No, thank you. All right. I'll give you two minutes for a rebuttal. Good morning. Good morning. May it please the Court. Yeah, it's still good morning. Aria Branch on behalf of the appellees. The District Court did not abuse its discretion when it adjoined HB 892. The provisions that are challenged in this lawsuit force voters to make a choice, either risk committing a felony or don't exercise your fundamental right to vote. The disclosure requirement criminalizes the failure to complete a section of the voter registration form. So, is there anything out there that you can cite to me that suggests that a person has a constitutional right to register to vote in more than one place? There are several cases. That's a very narrow question. Sure. And I don't, I don't think that actually the question of whether or not someone has a constitutional right to register in more than one place is the correct question here. This law Well, I understand you don't think it's the correct question. And I get that. But I want to know, is there any authority holding or suggesting that a person has a constitutional right to register to vote in more than one place? Not that I'm aware of. But again, this law criminalizes the remaining on the rolls of other states. So, there might be some law where you, that could withstand constitutional scrutiny where you can't register more than one spot. Maybe. There might be. And I don't think the district court said that, you know, you can't regulate or states can't regulate being registered in more than one state sort of writ large. But do we agree you can't vote twice? We agree you cannot vote twice. We did not challenge that provision of HB 892. It's always been a crime to vote twice in Montana. It was a crime before this law was passed. It's a crime after this law was passed. That's not at issue at all in this lawsuit. But this law actually criminalizes simply remaining on the voter rolls of another state. It's essentially criminalizing your status of being registered in another state if you want to register and exercise the right to vote in Montana. And so below, there wasn't a dispute about whether or not voter registration is protected by the First Amendment. The Preminger case talks about that, but the Supreme Court has also talked about it in the Anderson case where it says that voter registration is protected speech. So, how was this case litigated below about, we asked questions, you know, in front of the district court about whether registering to vote was constitutionally, was it speech? How was it litigated below and how is it presented to us here? I think it was basically assumed that registering to vote constitutes expressive conduct that is protected by the First Amendment. And I would point this court to page three of Appellant's opening brief in this case on appeal, where it says that no party disputes that the Montana prohibiting the means for one of the many ways people can vote. And I think that's the sort of crux of this case, is that the Montana legislature prohibited the means for how people vote and criminalizing and creating felony penalties for registering to vote in Montana if you simply remain on the voter rolls, which is something a voter has no control over, as Judge Graber's questioning pointed out earlier, including in states that have automatic voter registration, like Oregon, where you're automatically registered. And so, voters may not even know that they are registered to vote in those states, which I think really speaks to... Well, your friend on the other side said that, don't worry because you don't have the men's ray. And that's where I said, you can beat the rat, but not the ride. Yeah, I think that's exactly right. I mean, the injury here is chilling speech. It's chilling voter registration. Well, why couldn't a voter send a letter to the Secretary of State and all the previous jurisdictions where they've been registered to vote and at least make the attempt to unregister in other jurisdictions? I said there's nothing a voter could do, but that seems not accurate. I think it's out of their control whether or not they actually remain on the voter rolls. And the language of this statute is really important here. It is vague, but it criminalizes purposefully remaining registered to vote. How would you satisfy that mens rea requirement if you made an attempt to unregister yourself in a previous jurisdiction? Well, I think it begs the question, if you attempted to register or to deregister in another state, but your attempt is not successful, at what point are you again purposely remaining on the rolls? I think when you're talking about the right to vote and First Amendment and potential felony penalties, states have the obligation to be clear when they pass these types of restrictions. And that is why this law is vague. That's why it's overbroad. Your brief focuses a lot on the vagueness issue, but the district court didn't reach it because it ruled on overbreath and also said more facts were needed to address vagueness. So why should we overlook the fact that the district court didn't address that issue in the first instance? I think that the vagueness claim provides a very strong basis for affirmance, as does overbreath, but we did brief vagueness because it is an important claim. Respectfully, I don't think additional facts are needed to resolve the vagueness of the statute. It's a relatively short statute. We brought a facial claim. It is a pure question of law. The other side points out that we serve discovery in this case, but that is not determinative here. We actually have an additional claim in this case that we did not move for a preliminary injunction on, a burden on the right to vote claim. And so the discovery we served is primarily focused on that claim, which is not at issue here. This is a pure question of law. The statute is not clear in terms of what conduct is required to violate the law, what conduct is actually prohibited. It's arguably retroactive because it applies to people who, you know, on the day the law was passed, may have had a registration in a prior state, but it criminalizes that activity, you know, as of the date of enactment. That person hasn't done anything wrong, hasn't actually taken any action, but they are automatically at risk of becoming a felon. And so the district court spent a lot of time actually analyzing our vagueness claim and pointed out many of the different flaws in the law. And so I think it actually provides an additional basis for affirmance by this court. I had a question for you about Preminger. That dealt with registering others to vote. What support do you have for the proposition that registering yourself to vote is protected First Amendment activity? Well, I would point the court to the Supreme Court's decision in Anderson v. Celebrezze where the court said, quote, laws that govern the registration and qualification of voters implicate First Amendment rights. And I would say that even in cases where the court or courts have rejected challenges to other aspects of the voter registration process, as in Preminger, these courts have recognized that a voter's choice to register to vote is protected. Voting for America Incorporated v. Steen is a Fifth Circuit case that says, assuming a voter registration application is speech, it is the voter's speech indicating his desire to be registered. And so there are this, you know, I think a lot of states don't criminalize this kind of activity because it is so clearly protected by the First Amendment. And so there are cases, including ones that are cited in our brief, that talk about the fact that you can't sort of slice and dice the voter registration process. But the choice to register to vote, the idea of filling out an application that says to others that I want to have a say in the political affairs of this country and my community is protected speech. And as Judge Callahan pointed out earlier, the First Amendment is broad. Almost all speech is protected by the First Amendment. Somehow expands the doctrine. It's just not supported by the law. And I think, frankly, erroneous. I would also... So if you go to the evidence here, if you wait, if we, let's say, just move on from this and we look at what the district court had in front of it, what, how would you view that? We talked about 14 people voted twice and then there's other declarations about other things. What's the status of the evidence in our standard of review? Sure. Well, the Supreme Court has said, or I think it might be in a Ninth Circuit case, it might be in the Redondo Beach case, but that there is not a requirement to show admissible evidence of overbreath. You have to show arguable instances of overbreath. And courts necessarily have to deal in hypotheticals when you're dealing with a vagueness overbreath challenge. So in the record, there's evidence of 14 suspected cases of double voting. This is over a course of, I don't know how many election cycles, but in elections in which millions of Montana voters have cast ballots. And we have also put in the record at ER... I'm told there's more cows there. So do the cows get to vote than people? I haven't had the chance to go to Montana because we had a virtual hearing below. So I'm not sure. But in the record also at ER 2011-22, we have a document from the Pew Center that says that in 2012, 2.75 million Americans were registered to vote in more than one state. We did some math and we think that would be in the tens of thousands of Montana voters based on the population today. So if you weigh the unconstitutional applications of this law, which criminalizes simply remaining on the voter rolls and failure to fill in a form of a voter registration application, that I think pales in comparison to the suspected double voting. The legislature was clear that it was trying to prohibit double voting and it has done that. But this is simply just not a constitutional way to legislate around this. I think voters in Montana, frankly, our plaintiffs who are engaged in voter registration on the ground every day deserve more, especially when there are felony criminal penalties at issue. And so I would ask that the court affirm the district court's injunction. And if there are no further questions, I will sit down. I think I have no further questions. You don't appear to be. Thank you. Thank you. Thank you for your argument. Thank you. Thank you, Your Honor. It's just a couple of quick points. Your Honor's asked about vagueness. That would be reviewed. The district court's decision that there were still factual issues that would be relevant to that analysis is reviewed for abuse of discretion. And again, the fact that the parties are engaging in discovery, they should have the opportunity to do so. And the district court can evaluate the vagueness question. So we think it's inappropriate for this court to reach the vagueness question altogether. I'll also just go back to, I think the plaintiffs made a couple points. They said that you can't slice and dice the registration process. But that's exactly what that choice requires, the court to look at the granularity of which the conduct regulated by the statute, what it actually is regulating. And, you know, I'd point the court to this court's decision in Knox v. Brnovich, which was a ballot case. But there the court said, assume that the ballot, the vote on the ballot is speech. The collection of the ballots, the distribution of ballots, that is administrative. That is not protected speech. And so there, this court did slice and dice the process to identify what is protected speech, what is not. The court can do the same here. I'm assuming there's some urgency since we've expedited this matter and there's upcoming elections. So I'm assuming we need to rule relatively quickly. Would that be correct? Yes, Your Honor. That would be our request. I mean, that's what everyone... That's what our request would be. Okay. And I think, and so even if this court doesn't reach the First Amendment question, again, there still needs to be a full analysis below of all the full range of applications of this law. And again, we're looking at how this law applies to the rancher with the cows, the person, you know, in downtown Bozeman or Missoula, who's not a student at Montana State. Also, we're looking at how it applies to all college students, all out-of-state college students, all... And plaintiffs and their hypotheticals with, you know, the college student, again, the person in the probation period of their job, don't explain how just, how that law actually as applied to those individuals would be unconstitutional. And so again, that choice says that this court should vacate, that the district court should have the opportunity to engage in that full analysis. All right. I've given you extra time. Thank you. And now you're still going a little extra. So, well, unless my colleagues have questions, I'm going to, I'm going to call time on you. Great. Thank you, Your Honors. Okay. Thank you. All right. This court then will be in recess till tomorrow at 9 a.m. Thank you both for your helpful arguments in this matter. All rise.
judges: GRABER, CALLAHAN, KOH